**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pinnacle Pines Community Association, an Arizona non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>Lexington Insurance Company, a Delaware corporation; Chartis Specialty Insurance Company, an Illinois corporation formerly known as American International Specialty Lines Insurance Company; et. al.,<br><br>Defendants. | No. CV-12-8202-PCT-DGC<br><br>**ORDER** |

Before the Court is the motion to dismiss filed by Defendant Chartis Specialty Insurance Company ("Chartis").[1] Doc. 33. The motion is fully briefed. For the reasons set forth below, the Court will deny the motion.[2]

---

[1] Defendant Lexington Insurance Company ("Lexington") originally joined with Chartis in filing the motion. The parties subsequently stipulated, however, to dismiss Lexington with prejudice (Doc. 51), and that "[t]he motion to dismiss as related to Chartis Specialty Insurance Company will remain." Doc. 51 at 1-2. The Court granted the stipulation. Doc. 52.

[2] Plaintiffs' request for oral argument is denied. The parties' briefings and other submissions have more than amply addressed the issues raised by the motions, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I.     Background.

Empire Residential Construction, L.P., and Empire Residential Sales, L.P. (the "Empire Entities"), began construction of a 60-unit condominium community in Flagstaff, Arizona, sometime in 2006. Doc. 10, ¶¶ 1, 11. Before construction began, the Empire Entities obtained liability insurance from Chartis.[3] *Id.*, ¶ 36. Chartis issued a liability insurance policy that contained a per-occurrence limit of $25,000,000 and an aggregate limit of $25,000,000 for the period of June 1, 2004 to June 1, 2007. *Id*. The policy provides that Chartis is liable only for damages in excess of a $1 million per-occurrence self-insured retention ("SIR"). Doc. 10-6 at 8, 35-38. Additionally, the policy does not apply to "Property Damage . . . arising out of . . . A defect, deficiency [or] inadequacy . . . in Your Product or Your Work[.]" Doc. 10-6 at 12. On or about April 25, 2008, the Empire Entities ceased performing work and filed a petition for bankruptcy protection. *Id.*, ¶¶ 11-12.

Plaintiff Pinnacle Pines Community Association is listed as a named insured and as a specified location covered by the policy. Doc. 10., ¶¶ 38, 40; Doc. 10-6 at 56. Pinnacle Pines is a non-profit corporation comprised of members who own one or more of the condominiums located in the Pinnacle Pines development. *Id.*, ¶ 1. Plaintiff obtained relief from the automatic stay imposed under section 362 of the Bankruptcy Code to pursue claims against the Empire Entities for the improper and defective construction of the Pinnacle Pines common areas, which allegedly resulted in property damage. *Id.*, ¶¶ 13-14. Plaintiff initiated that action by serving the Empire Entities with a notice of claim on or about February 17, 2010, pursuant to section 16.3 of the Declaration of Covenants, Conditions, Restrictions, Reservations, and Easements for

---

[3] Chartis was formerly known as American International Specialty Lines Insurance Company. Doc. 10, ¶ 4.

Pinnacle Pines ("CC&R's"). *Id.*, ¶ 14. At the outset of litigation, the Empire Entities tendered their defense and indemnification against Plaintiff's claims to Chartis. *Id.*, ¶ 39.

Pursuant to Article 13 of the CC&R's, Plaintiff and the Empire Entities submitted their dispute to binding arbitration. *Id.*, ¶ 15. Arbitration hearings were conducted, and on May 17, 2012, the arbitrator awarded Plaintiff $1,371,220.33, comprised of $920,521 in compensatory damages, $276,156.30 in attorneys' fees, $165,000 in expert witness fees, and $9,543.03 in costs. *Id.*, ¶¶ 15-16; Doc. 10-1. The Coconino County Superior Court confirmed the arbitration award in a final judgment entered in favor of Plaintiff against the Empire Entities on September 11, 2012. Doc. 10, ¶ 17; Doc. 10-2.

## II. Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Absent specific exceptions, the Court will not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). "If, on a motion under Rule

1  12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the
2  court the motion must be treated as one for summary judgment under Rule 56." Fed. R.
3  Civ. P. 12(d). "A court may, however, consider certain materials – documents attached
4  to the complaint, documents incorporated by reference in the complaint, or matters of
5  judicial notice – without converting the motion to dismiss into a motion for summary
6  judgment." *Ritchie*, 343 F.3d at 908 (citations omitted); *see also Knievel v. ESPN,* 393
7  F.3d 1068, 1076 (9th Cir. 2005) (noting that the court may take into account documents
8  "whose contents are alleged in a complaint and whose authenticity no party questions, but
9  which are not physically attached to the [plaintiff's] pleading.").

10  Plaintiff attached to its amended complaint the following three exhibits: (1) the
11  final arbitration award (Doc. 10-1); (2) the judgment confirming the arbitration award
12  (Doc. 10-2); and (3) the policy (Doc. 10-6). In support of its motion to dismiss, Chartis
13  submitted the following two exhibits: (1) the policy (Doc. 33-3); and (2) the final
14  arbitration award (Doc. 33-4). The parties have submitted identical copies of the final
15  arbitration award. The parties have not, however, submitted identical copies of the
16  policy. Plaintiff does not appear to dispute the accuracy of the copy of the policy
17  submitted by Chartis, and even cites to that copy in responding to the pending motion
18  (Doc. 34 at 5). The Court finds that it can consider the parties' exhibits, including the
19  copy of the policy submitted by Chartis, without converting the motion to one for
20  summary judgment because the materials were either attached to the complaint or
21  incorporated by reference into the complaint.

22  Plaintiff filed a supplemental response to Chartis's motion (Doc. 38) and attached
23  two additional exhibits: a copy of the stipulation entered into with the Empire Entities'
24  bankruptcy trustee that allegedly provides Plaintiff with contractual standing to assert
25  claims against Chartis (Doc. 38-1), and the bankruptcy court's decision to grant that
26  stipulation (Doc. 38-2). In its reply brief, Chartis contends that the Court cannot consider
27  these exhibits. Doc. 41 at 6-7. The Court agrees and will not consider the supplemental
28  response or its exhibits in ruling on the pending motion to dismiss.

**III.    Discussion.**

Chartis argues that Plaintiff lacks standing to bring a direct action against it and that the policy does not cover the property damage claims underlying the judgment. Doc. 33.

**A.    Standing.**

Plaintiff seeks declaratory relief pursuant to the Federal Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201, that Chartis is obligated to indemnify the Empire Entities for the judgment. *Id.*, ¶¶ 8, 45-46, 49, 51. The Act provides that "[i]n a *case of actual controversy* within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a) (emphasis added). Thus, by its very terms, the Act incorporates Article III's mandate that federal courts may exercise jurisdiction only over an actual case or controversy. *See* U.S. Const. art. III, § 2; *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."). In determining whether an actual controversy exists under the Act, the question is whether the facts show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Golden v. Zwickler,* 394 U.S. 103, 108 (1969) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Chartis submits that there is no present adverse legal interest between it and Plaintiff because Arizona has not enacted a direct action statute permitting an injured party to sue the tortfeasor's insurance carrier (Doc. 33 at 6), and contractual privity does not exist between it and Plaintiff (*id.* at 7). In response, Plaintiff argues that a justiciable controversy exists because once an injured party has a judgment against the insured, under Arizona law, "a form of privity is created between the injured party and the insurer." Doc. 34 at 3.

Arizona has not enacted a direct action statute (*W. Cas. & Sur. Co. v. Evans*, 636 P.2d 111, 114 n. 7 (Ariz. Ct. App. 1981)), but the Court cannot find that Plaintiff can establish no set of facts that would permit it to maintain a declaratory judgment action against Chartis. Under Arizona law, it appears that an injured party may maintain a suit against an insurer to recover on a judgment rendered against an insured. *See Sandoval v. Chenoweth*, 428 P.2d 98, 102 (Ariz. 1967) ("It seems to be settled that after recovering a judgment against an insured under a liability policy, the injured third person may collect such judgment by instituting garnishment proceedings against the liability insurer." (citations omitted)); *see also W. Cas. & Sur. Co.*, 623 P.2d at 113-14 (noting that no cause of action accrued between the injured third person and the insurer until judgment was entered against the insured in the underlying tort suit. "Until that point, no privity existed between [the insured] and [the injured third parties] to support a claim of one against another." (citing *Smith Stage Co. v. Eckert*, 184 P. 1001 (Ariz. 1919) (injured party must first obtain a judgment against insured before he has any remedy against indemnity company on policy) (other citations omitted)); *Gen. Acc. Fire & Life Assur. Corp. v. Clark*, 34 F.2d 833, 834 (9th Cir. 1929) ("It has been held by the Supreme Court of Arizona that a policy similar to the one here sued upon is one of indemnity, and that the right of the passenger or third person injured against the insurance company accrues thereon upon 'final judgment' against the person assured." (citing *Smith Stage Co.*, 184 P. 1001; *Ariz. Mut. Auto Ins. Co. v. Bernal*, 203 P. 338 (Ariz. 1922)).

Chartis cites *Maricopa County v. Barfield*, 75 P.3d 714, 717 (Ariz. Ct. App. 2003), for the proposition that "Arizona follows the general rule that, in the absence of a contractual or statutory provision to the contrary, an injured person has no direct cause of action against a tortfeasor's insurance company." Doc. 33 at 6. But that case also explains that "[t]his holding obviously does not preclude any ability of the [third person injured] to enforce its lien against [the insured tortfeasor], obtain a judgment and then institute a garnishment action against [the tortfeasor's insurer] to collect that judgment." 75 P.3d at 718 n. 7 (citing *Sandoval*, 428 P.2d at 102); *see also Westchester Fire Ins. Co.*

- 6 -

*v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009) (finding that the injured third party had standing to intervene in a declatory judgment action in which the insured sought a declaration that it had no duty to indemnify the insured (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941) for the proposition that "The Supreme Court established some time ago that an actual controversy can exist between an insurer and the allegedly injured third party even though that third party is not a party to the insurance contract.")). Given the allegations in the amended complaint, the final judgment that Plaintiff obtained against the Empire Entities – in an action where Chartis defended the Empire Entities (Docs. 10-1, 10-2, 33-4) – and the policy language (Docs. 10-6, 33-3), the Court cannot at this point find that Plaintiff lacks standing.

### B.     The Policy.

Chartis argues that its policy does not apply to property damage arising out of a defect in the Empire Entities' product or work – the damage underlying the judgment Plaintiff obtained against the Empire Entities. Doc. 33 at 8-9. *See* Docs. 10-6 at 12, Doc. 33-3 at 9 ("This insurance does not apply to . . . "Property Damage . . . arising out of . . . A defect, deficiency [or] inadequacy . . . in Your Product or Your Work[.]"). Chartis contends that courts have interpreted similar language in general commercial liability insurance policies to exclude faulty workmanship or defects. Doc. 33 at 9 (citing *Burlington Ins. Co. v. Oceanic Design & Constr. Inc.*, 383 F.3d 940, 948-49 (9th Cir. 2004)). Plaintiff responds by pointing to the policy's definition of "Your Product," which includes "Any goods or products, *other than real property*[.]" Doc. 34 at 5 (quoting Docs. 10-6 at 11, Doc. 33-3 at 8 (emphasis added)). Plaintiff argues that the "Your Product" exclusion does not apply because its judgment against the Empire Entities related to real property damage claims. *Id.* Plaintiff also points to the policy's statement that "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Id.* (quoting Docs. 10-6 at 12, Doc. 33-3 at 9). Plaintiff argues that whether the property damage was caused by the Empire Entities' work or a subcontractor's work is a question of fact. *Id.*

The Court concludes dismissal is not warranted at this stage of the litigation. Discovery and additional briefing at the summary judgment stage will shed light on whether the policy exclusion applies in this case.

Chartis next argues that it should be dismissed because the policy's $1 million SIR has not been met. Doc. 33 at 9-10. In response, Plaintiff submits that the policy's SIR has been met because the underlying judgment exceeds the $1 million SIR and at least one other insurance policy covering the Empire Entities has already been exhausted. Doc. 34 at 6. Given the allegations in the complaint, the Court finds that Plaintiff has stated a plausible claim that the policy would apply to the underlying judgment.

**IT IS ORDERED** that Chartis's motion to dismiss (Doc. 33) is **denied**.

Dated this 12th day of March, 2013.

_David G. Campbell_
United States District Judge